UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANE CLAYTON, EMILY PERKINS, AND RICHARD PERKINS § § § | |
| v. § § | Civ. No. 4:13-CV-2862 |
| ASSET PLUS COMPANIES, LP, JRK PROPERTY HOLDINGS, INC., AND I.Q. DATA INTERNATIONAL, INC. § § § § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant I.Q. Data International, Inc.'s ("I.Q. Data") Motion for Summary Judgment (Doc. No. 17)[1] on Plaintiffs Jane Clayton, Emily Perkins, and Richard Perkin's Fair Debt Collection Practices Act (FDCPA) claims. After reviewing the summary judgment record, the parties' arguments, and the applicable law, the Court **GRANTS** I.Q. Data's Motion for Summary Judgment with respect to Plaintiffs' Section 1692d(5) claim, and **DENIES** I.Q. Data's Motion with respect to Plaintiffs' Section 1692e(2)(A) claim.

I. **BACKGROUND**[2]

Ms. Clayton, Ms. Perkins, and Mr. Perkins leased a property in the Parque View apartment complex. Ms. Clayton and Ms. Perkins lived in the property, and Mr. Perkins co-signed the lease. On October 31, 2012, Plaintiffs terminated their lease. Plaintiffs paid their November 2012 rent in full and returned the keys to the property. In a subsequent letter to the property management company, Defendant J.R.K. Property Holdings, Inc.

---

[1] All docket references are to Civil Action No. 4:13-CV-2862.
[2] For summary judgment purposes, the Court accepts Plaintiffs' account of the factual background.

("JRK"), Plaintiffs demanded a prorated refund of their November 2012 rent payment. JRK did not respond to this letter.

On or about December 27, 2012, Plaintiffs received a collection letter from Defendant I.Q. Data, stating that they owed a balance of $1,286.57 on their Parque View lease. The letter informed Plaintiffs that they would be charged a 6% annual interest rate on this balance. Between January 31, 2013 and April 11, 2013, I.Q. Data called Ms. Clayton and Ms. Perkins five times concerning this debt. Ms. Clayton received two phone calls on January 31, 2013 – one call lasted forty-seven minutes and the other lasted seven minutes. Ms. Perkins received three phone calls on March 13, 2013, April 4, 2013, and April 11, 2013.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Importantly, "the mere existence of some factual dispute will not defeat a motion for summary judgment; Rule 56 requires that the fact dispute be genuine and material." *Willis v. Roche Biomed. Lab.*, 61 F.3d 313, 315 (5th Cir. 1995). Material facts are those whose resolution "might affect the outcome of the suit under the governing law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson*, 477 U.S. at 248). A court may consider any evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). However, hearsay, unsubstantiated assertions, and unsupported speculation will not suffice to create or negate a genuine issue of fact. *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Shafer v. Williams*, 794 F.2d 1030, 1033 (5th Circ. 1986); see Fed. R. Civ. P. 56(c)(4).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact, but it need not negate the elements of the nonmoving party's case. Fed. R. Civ. P. 56(a); *Willis*, 61 F.3d at 315 (citing *Celotex*, 477 U.S. at 322-23); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). If the burden of proof at trial lies with the nonmoving party, the moving party may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. However, "[i]f the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)).

Once the moving party has met its burden, the nonmoving party must come forward with specific evidence and articulate precisely how it supports its claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Simply resting on the allegations in the pleadings will not suffice. Nor will this burden be satisfied "by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at

1075). In deciding a summary judgment motion, the court must draw all reasonable inferences in the light most favorable to the nonmoving party, and it cannot make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255; *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

**III. ANALYSIS**

The FDCPA was enacted to eliminate abusive debt collection practices, and ensure consistent consumer protection against debt collection abuses. 15 U.S.C. § 1692, *et seq*. Plaintiffs' claims arise under Sections 1692d(5) and 1692e(2)(A) of the FDCPA, which respectively prohibit harassing or abusive conduct and false or misleading representations in connection with the collection of debt. 15 U.S.C. §§ 1692d(5); 1692e(2)(A). [3] Defendant I.Q. Data moves for summary judgment, arguing that there is an absence of evidence to support Plaintiffs' claims. Plaintiffs contend that both of their claims present disputed issues of material fact.

A. <u>Harassment or Abuse</u>

Section 1692d(5) prohibits,

> "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

15 U.S.C. § 1692d(5). Unlike most sections of the FDCPA, this section contains an intent requirement – a plaintiff must show that the repeated calls were made with the intent to annoy, abuse or harass. *See Clingaman v. Certegy Payment Recovery Services*, No. H-10-

---

[3] These sections of the FDCPA apply only to debt collectors and consumers. Neither party has contested the classification of Defendant I.Q. Data as a debt collector, or the classification of Plaintiffs as consumers, as defined by statute. *See* 15 U.S.C. § 1692a(3), (6).

4

2483, 2011 WL 2078629, *4 (S.D. Tex. May 26, 2011); *Lee v. Credit Management, LP*, 846 F.Supp.2d 716, 725 (S.D. Tex. 2012). Intent to harass "may be inferred from the frequency, pattern, or substance of the telephone calls." *Young v. Asset Acceptance, LLC*, No: 3:09-CV-2477-BH, 2011 WL 1766058, *3 (N.D. Tex. May 10, 2011). Although the question of whether a debt collector's conduct constitutes harassment is typically a question of fact, courts have recognized that, in certain cases, this question can be resolved as a matter of law. *See e.g.*, *Lee*, 846 F.Supp.2d at 725 (granting summary judgment in favor of defendant because debt collector called plaintiff "a handful of times" and spoke to him briefly); *Clingaman*, 2011 WL 2078629 at *4 (granting summary judgment in favor of defendant where defendant placed fifty-five calls to plaintiff in three and a half month period); *Karp v. Financial Recovery Serv. Inc.*, No. A-12-CA-985 LY, 2013 WL 6734110, *7 (W.D. Tex. Dec. 18, 2013) (granting summary judgment in favor of defendant where defendant placed six calls to plaintiff in two weeks); *Carman v. CBE Group, Inc.*, 782 F.Supp.2d 1223, 1229-32 (D. Kan. 2011) (granting summary judgment in favor of defendant where defendant called plaintiff 149 times in a two month period); *Tucker v. CBE Group, Inc.*, 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment in favor of defendant because "[d]efendant only left a total of six messages, made no more than seven calls in single day, and did not call back the same day after leaving a message."). These cases suggest that frequent or even daily debt collection phone calls over a period of months may be insufficient to state a claim under Section 1692d(5).[4]

---

[4] The Court is unconvinced that evidence of multiple daily phone calls from a debt collector over a period of months is clearly insufficient, as a matter of law, to demonstrate an intent to harass. But, as the instant case only concerns five phone calls

By contrast, where courts have found that plaintiffs have stated a claim for harassment or abuse, a high volume of phone calls is typically accompanied by allegations of other objectionable conduct. *See e.g., Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 357 (6th Cir. 2012) (holding that plaintiffs sufficiently stated a claim because they alleged that defendant made "endless collection calls . . . despite cease and desist requests and registry on the federal 'Do Not Call' directory; threatened foreclosure; assessed monthly late fees; and reported derogatory information to the credit reporting agencies"); *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994) ("Threatening and intimidating calls to a consumer at an inconvenient time or place could rationally support a jury finding of harassing conduct.").

Although there is disagreement about the specific volume or pattern of calls that demonstrates an intent to annoy, abuse or harass, the Court is not persuaded that five calls over more than two months are sufficient to create a triable issue of fact. There is no evidence that the calls were intimidating, nor is there evidence that they were made at unreasonable hours. Only two of the phone calls occurred on the same day, and the second call on that day was brief. The remaining three calls were placed on separate days at least a week apart. Even when viewed in the light most favorable to Plaintiffs, the evidence does not raise a genuine issue of material fact regarding whether I.Q. Data called Ms. Clayton and Ms. Perkins with the intent to harass or annoy.

B. <u>False or Misleading Representations</u>

Defendant I.Q. Data also moves for summary judgment on Plaintiffs' Section 1692e(2)(A) claims. Section 1692e(2)(A) prohibits "[t]he false representation of . . . the

---

over more than two months, the Court need not determine whether a high volume and frequency of phone calls raise a triable issue of fact.

character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Defendant argues that Plaintiffs have no evidence to support a claim for false representation because the contested annual interest charge is permissible under Texas Finance Code Section 302.002.

Defendant's argument misconstrues Plaintiffs' false representation claim. Plaintiffs challenge both the 6% annual interest charge and the outstanding balance of $1,286.57, denying that they owe any debt on the Parque View lease. This factual dispute is undoubtedly material; whether Plaintiffs owe money, and the amount they owe, is at the core of the false representation claim. Defendant has failed to show that there is an absence of evidence to support Plaintiffs' claim that they do not owe a balance on the Parque View lease.

Further, by its terms, Texas Finance Code Section 302.002 applies only to creditors.[5] *See Bufkin v. Bufkin*, 259 S.W.3d 343, 357 (Tex.App.-Dallas 2008) (noting that Section 302.002 "does not apply to contracts where there is no extension of credit"); *see also de la Garza v. de la Garza*, 185 S.W.3d 924, 928 (Tex.App-Dallas 2006) (finding that Section 302.002 does not allow a non-creditor to recover pre-judgment interest). Under the Texas Finance Code, a creditor is defined as "a person who loans money or otherwise extends credit." Tex. Fin. Code. § 301.002(a)(3). As there is no evidence that I.Q. Data loaned money or extended credit to Plaintiffs, Section 302.002 is

---

[5] Section 302.002 states, in relevant part, "[i]f a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest at the rate of six percent a year on the principal amount of the credit extended beginning on the 30th day after the date on which the amount is due." Tex. Fin. Code § 302.002.

inapplicable, and does not undermine Plaintiffs' claim for false representation of the character, amount, or legal status of their alleged debt.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** I.Q. Data's Motion for Summary Judgment with respect to Plaintiffs' Section 1692d(5) claim, and **DENIES** I.Q. Data's Motion with respect to Plaintiffs' Section 1692e(2)(A) claim.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 14th day of November, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE